UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ARTHUR W. HECKMAN, JR.,

                    Plaintiff,

vs.                              Case No.  2:07-cv-237-FtM-99SPC

CAPTAIN  DEXTER  MCCARTER,    JAMES
BROWN,     Sergeant;   BRUCE    SOOY,
Sergeant, WILLIAM  THIESSEN, C.O.,
and JOHN DOE, Sergeant,

                    Defendants.
_____

**OPINION AND ORDER**

     This matter comes before the Court upon review of Defendant
McCarter's Motion to Dismiss (Doc. #92, "Motion") filed November
24, 2007.  After being granted an extension of time, Plaintiff
filed a Response to the Motion (Doc. #111, "Response") on March 24,
2008.  This matter is now ripe for review.

**I.**

     Plaintiff, Arthur W. Heckman ("Heckman" or "Plaintiff') who
is proceeding *pro se* and is currently confined at the Federal
Detention Center in Philadelphia, Pennsylvania has pending before
the Court a second amended civil rights complaint filed pursuant
to 42 U.S.C. § 1983 in connection with  events that occurred while
Plaintiff was confined within the Florida Department of Corrections

at Hendry Correctional Facility from November 15, 2006, through November 20, 2006 (Doc. #85, "Complaint").

In particular, the Complaint contains the following allegations, which are presumed true for purposes of this Motion. Heckman, who is a convicted sex offender, arrived at Hendry Correctional Institution at approximately 8:30 a.m. on November 15, 2006 along with a number of other inmates. Complaint at 19. When Heckman was brought in for initial processing, Defendant Captain McCarter was reviewing Heckman's criminal file on the computer screen, which indicated that Heckman was a convicted sex offender. Id. McCarter then affirmatively "motioned to Sgt. Sooy" and "smiled at him." Id. at 20. Defendant Sooy went over to where McCarter was and was shown Plaintiff's inmate file on the computer. Id. McCarter did not do this with any other inmate. Id. Immediately after seeing the information, "Sooy went over to Defendants Brown and Thiessen and said something to them who were then looking at Plaintiff." Id. Plaintiff believes "that this was a prearranged signal between the officers" because he learned from other inmates that there "was an ongoing practice to beat inmates who came into Hendry who were convicted of sex offenses." Id.

As the inmates were leaving the room to be strip searched, Plaintiff was held back and was alone with Defendant Thiessen. Id. Thiessen told Plaintiff that he did not like sex offenders and shoved Plaintiff into the wall. Id. Defendant Sooy then arrived

with additional inmates and Thiessen told Sooy he "should have given [Thiessen] more time . . . before sending anyone else in for he wanted to give [Heckman] a warming party." Id. at 21.  In front of Sooy, Thiessen then hit Heckman in the back of his head and directed him to join the other inmates.  Id.

Plaintiff proceeded through medical and mental health screening without incident.  Id.   Thereafter, Heckman was summoned by Thiessen to a private office and was told to face the wall while Thiessen stood behind him.  Id.  Plaintiff was then directed to "get down on [his] knees and face [Thiessen]."  Id.  Thiessen then shoved Heckman's face into Thiessen's groin and held it there for "about three (3) minutes."  Id.  Thiessen then beat and choked Heckman while telling him "no one cares about [Heckman] a sex offender."  Id.  at 22.  During this beating, Heckman blacked out and lost consciousness.  Id.   Thiessen warned Heckman that if he told anyone about anything, they would claim he was trying to escape and kill him.  Id.  Additionally, Thiessen told Heckman not to seek any medical attention.  Id.

At about noon, Heckman went to eat.  Id. at 23.  Thiessen ordered Heckman to give his tray to another inmate and leave the cafeteria.  Id.  He again warned Heckman not to report anything and told Heckman not to ever come to eat while Thiessen was on duty. Id.

-3-

Heckman reported to the multipurpose day room where Sooy was speaking to the inmates about rules. _Id._ Defendants Thiessen and Brown arrived and Thiessen pointed to Heckman. _Id._ Thiessen and Brown then went into the private office where Thiessen had earlier beat Heckman. _Id._ After Sooy finished his speech, he joined Thiessen and Brown in the office. _Id._ Thiessen came out of the office and told Heckman to come with him into the office. _Id._ When Heckman arrived in the office, Brown was looking at Heckman's "D.O.C. file" on the computer. _Id._ at 24. Sooy and Thiessen kept asking Heckman why he was in prison and would punch and kick Heckman when he answered. _Id._ When Heckman refused to admit to additional facts about his conviction, Sooy, Brown and Thiessen "started punching and kicking" Heckman until he passed out. _Id._ When Heckman regained consciousness, they refused to get him medical attention despite his pain. _Id._ at 25. Heckman's glasses were broke during this beating. _Id._ Defendants Sooy, Thiessen and Brown told Heckman that "he would be dead before the day was over" if he told anyone of the beatings. _Id._ Heckman lost control of his bladder due to his pain and fear. _Id._ Heckman stayed in his cell the remainder of the day and did not attend evening meal due to fear for his safety. _Id._

The next morning, Heckman was called out for "laundry." _Id._ at 26. While he was on a bench outside the laundry office, Sooy walked into the laundry office with Brown and Sergeant Doe.

-4-

Afterwards, the inmates who were in the laundry's office came out and told Heckman they would get him "for raping a 8 year old girl for 3 days and leaving her body along the road dead."   Id. Plaintiff "believes the inmates were told this in hopes that [he] would be attacked by inmates to cover-up [his] illegal and brutal beatings" by Thiessen and Brown.   Id.   Sooy called Heckman into the office, and, as Sooy was leaving, he turned to Brown and John Doe and said "have fun."  Doc. #95-2 (Exh. A).  Brown had Heckman's file up on the computer screen and Brown and John Doe kept asking Heckman what he did to be in prison.   Id.   John Doe then ran and kicked Heckman in his lower part of his chest knocking Heckman into the bathroom that adjoined the office.   Id. at 27.   Brown and John Doe turned out the bathroom light and continued to beat Heckman until John Doe was summoned over the radio.   Id.   Heckman again lost control of his bladder.  Id. at 28.   Brown gave Heckman a change of clothes and again warned him not to talk to anyone or seek medical attention.   Id.   When Plaintiff left the laundry office he went to his cell and stayed there until November 20th out of fear for his safety.   Id.

On November 20th, Plaintiff was called to medical to have his sugar checked.   Id. at 29.  Nurse Fernandez asked Plaintiff why he was having a problem walking, and Plaintiff showed her the bruises on his legs, chest, and stomach.   Id.   Plaintiff agreed to report the beatings.   Id. at 30.   He was placed in an "S.O.S." cell and

stripped of his clothing after he told the nurse he wanted to kill himself because he could not take any more beatings. Id. Plaintiff reported the incidents to Captain Baldrige, who was called to medical. Id. Pictures of his injuries were taken and Plaintiff was only given a visual examination by medical. Id. That same day, Plaintiff was transferred from Hendry to Charlotte Correctional Institution by Sooy. Id. at 31. Upon arrival at Charlotte, Sooy told the officers there that Plaintiff was a "convicted sex offender and they knew what to do." Id. Sooy also told the officers that Heckman had filed a complaint. Id. While at Charlotte, Heckman continued to be mistreated.[1] Id. On November 22, 2006, the inspector general came to take Heckman's statement. Id. at 32. On December 6, 2006, Plaintiff was transferred from Charlotte to Florida Reception Center. Id.

## II.

Defendant McCarter seeks dismissal of Plaintiff's Complaint on the grounds that the Complaint fails to state a claim for relief against him. See Motion at 1. Alternatively, Defendant claims he is entitled to qualified immunity. Id.

---

[1]Plaintiff states that while stripped searched in the shower and out of view of the cameras, he was attacked by officers and told if he gave the names of who beat him at Henry he would not leave Charlotte alive. Also, while at Charlotte, officers would throw his food trays at him and soak his bedding with water and urine from the toilet and order him to lay down in the bedding, threatening to spray Plaintiff for disobeying an order if he refused. Consequently, Plaintiff would lay on the urine soaked bedding and mattress. Id. at 31.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). However, the Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint. Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); Dura Pharms., Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." See Bell Atlantic Corp. v. Twombly, ____ U.S. _____, 127 S. Ct. 1955, 1965, 1968-69 (2007) (citations omitted) (abrogating Conley v. Gibson, 355 U.S. 41 (1957) and stating that Conley did not set forth the minimum standard governing a complaint's survival under a motion to dismiss, rather the case "described the breadth of opportunity to prove what an adequate complaint claims").

With respect to § 1983 cases that involve individuals entitled to assert qualified immunity, the Eleventh Circuit imposes "heightened pleading requirements." Swann v. Southern Health Partners, Inc., 388 F.3d 834, 836-838 (11th Cir. 2004)(citing Leatherman v. Tarrant County, 507 U.S. 163 (1993)); Laurie v. Ala. Court of Crim. Appeals, 256 F.3d 1266, 1275-76 (11th Cir. 2001). This heightened pleading standard requires a plaintiff to allege the facts supporting a § 1983 claim with some specificity. See GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367, 1368 (11th Cir. 1998) (stressing "that the heightened pleading requirement is the law of this Circuit"). Because Plaintiff is proceeding pro se, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)). Nevertheless, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992).

Section 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To establish a claim under § 1983, plaintiff must prove that

-8-

(1) defendant deprived her of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, where a plaintiff seeks to impose liability on one who is not an active participant in the alleged constitutional deprivation, that plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Williams v. Bennett, 689 F.2d 1370, 1380-1381 (11th Cir. 1982). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims, if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992).

## III.

Liberally construing the Complaint, the Court finds the Complaint adequately states a claim for relief under § 1983 against Defendant McCarter to withstand a motion to dismiss. Admittedly, Plaintiff does not aver that Defendant McCarter personally participated in the actual attacks on Plaintiff. See generally Complaint. Nonetheless, supervisory liability can be imposed under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the

alleged constitutional deprivation." <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990). That causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so [,]" or when a custom or policy of the supervisor results in deliberate indifference to constitutional rights. <u>Cottone</u>, 326 F.3d at 1360 (quoting <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1234 (11th Cir. 2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." <u>Brown</u>, 906 F.2d at 671. Alternatively, facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that they would do so and failed to stop them establishes a causal connection. <u>Cottone</u>, 326 F.3d at 1360 (quoting <u>Gonzalez</u>, 325 F.3d at 1234) (remaining citations omitted).

Here, the Complaint alleges that there was widespread knowledge of an "ongoing practice to beat inmates who came into Henry who were convicted of sex offenses." Complaint at 20. Further, the Complaint alleges that McCarter, as a supervising officer, impliedly directed his subordinates to act unlawfully.

Alternatively, the Court finds the Complaint sufficiently states a claim against Defendant McCarter for conspiracy to violate Plaintiff's constitutional rights in violation of § 1983.

"Conspiring to violate another person's constitutional rights violates section 1983." Rowe v. City of Ft. Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002)(citations omitted). "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties reached an understanding to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.'" Bailey v. Board of County Comm'rs Of Alachua County, 956 F.2d 1112, 1122 (11th Cir. 1992)(quoting Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990)). Plaintiff need not produce a "smoking gun" to establish the "understanding" or "willful participation" required to show a conspiracy, but must show some evidence of agreement between the defendants. Rowe, 279 F.3d at 1283-1284. See also Arline v. City of Jacksonville, 359 F. Supp. 2d 1300, 1312 (M.D. Fla. 2005). Circumstantial evidence may be sufficient if it proves the existence the conspiracy. Burrell v. Board of Trs. of Ga. Military Coll., 970 F.2d 785, 789 (11th Cir. 1992). Here, based upon McCarter's gestures and the proximity of the incidents, the Court finds sufficient facts to arguably evince an understanding or agreement between McCarter and Sooy to violate Heckman's constitutional rights.

**IV.**

Having found that the Complaint adequately states a constitutional violation against McCarter, the Court will determine whether McCarter is entitled to the protections of qualified

immunity.  "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730 (2002)); see also Al-Amin v. Smith, 511 F.3d 1317, 1323-24 (11th Cir. 2008).  Thus, governmental officials must first prove they were acting within their discretionary authority in order to receive qualified immunity.  Id. at 1234 (citing Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)).  "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority."  Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998)(citing Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)).

    "Once the governmental officials have established that they were acting within their discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate."  Id.  "The Supreme Court has established a two-part test to determine the applicability of qualified immunity." Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003).

        The threshold inquiry a court must undertake in a
        qualified immunity analysis is whether [the] plaintiff's

-12-

allegations, if true, establish a constitutional violation. <u>Hope</u>, 122 S. Ct. at 2513. If under the plaintiff's allegations, the defendants would have violated a constitutional right, the next, sequential step is to ask whether the right was clearly established. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

<u>Cottone</u>, 326 F.3d at 1358.

The Court has previously determined that taking Plaintiff's allegations as true, Plaintiff has sufficiently stated a claim against Defendant McCarter under a theory of supervisory liability under § 1983, as well as for conspiracy to deprive Plaintiff of his constitutional rights.  This Court further concludes that pre-existing law gave Defendant fair and clear warning that such actions was unlawful.[2]  Accepting the factual allegations in the Complaint as true and drawing all reasonable inferences therefrom in Plaintiff's favor, the Court finds that Defendant is not entitled to the protection of qualified immunity at this Rule 12(b)(6) stage of the litigation, and will deny Defendant's motion to dismiss for failure to state a claim.

ACCORDINGLY, it is hereby

**ORDERED:**

1.  Defendant McCarter's Motion to Dismiss (Doc. #92) is **DENIED.**

---

[2]The Court notes that this finding is without prejudice to Defendant's ability to revisit this matter on summary judgment, if appropriate.

2.   Defendant McCarter shall file his Answer to Plaintiff's Second Amended Complaint **within twenty (20) days** from the date of this Order.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___24th___ day of September, 2008.

_____
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record